IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DANIEL L. HABEL,                    )    CIVIL NO. 10-00576 LEK-BMK
                                    )
            Plaintiff,              )
                                    )
      vs.                           )
                                    )
GROVE FARM FISH & POI, LLC,         )
dba Hukilau Foods, <u>in</u>            )
<u>personam</u>; M/V WAILOA HA533CC,    )
and the FEED BARGE HA737CC,         )
their Engines, Tackle,              )
Apparel, Furniture and              )
Appurtenances, etc., <u>in</u> <u>rem</u>,   )
                                    )
            Defendants.             )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMGENT**

        Before the Court is Plaintiff Daniel Habel's

("Plaintiff") Motion for Partial Summary Judgment ("Motion"),

filed November 1, 2011.  Defendants Grove Farm Fish & Poi, LLC,

doing business as Hukilau Foods ("Grove Farm"), M/V Wailoa HA

533CC, and Same Smell HA 0737CC (collectively "Defendants") filed

their memorandum in opposition on January 23, 2012, and Plaintiff

filed his reply on January 30, 2012.  This matter came on for

hearing on February 13, 2012.  Appearing on behalf of Plaintiff

were Howard McPherson, Esq., and David Fairbanks, Esq., and

appearing on behalf of Defendants were Mark Hamilton, Esq., and

Michael Nakano, Esq.  After careful consideration of the Motion,

supporting and opposing memoranda, and the arguments of counsel,

Plaintiff's Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.  The Motion is GRANTED as to Plaintiff's Jones Act seaman status and the applicability of United States Coast Guard commercial diving operations regulations, and DENIED in all other respects.

## BACKGROUND

Plaintiff was employed as a diver and offshore crewman by Grove Farm from April 2009 to February 2010.  Grove Farm raises moi fish in open-ocean cages off of Ewa Beach, Oahu, and owns and operates *in rem* defendants M/V Wailoa HA 533CC ("Wailoa"), and the Feed Barge Same Smell HA 0737CC ("Feed Barge").  Plaintiff alleges that, during the course of his employment, Grove Farm failed to provide a safe place in which to work, including a lack of commercial diving safeguards and procedures required by law.  Plaintiff's Complaint alleges: (1) Jones Act negligence pursuant to 46 U.S.C. § 30104 (Count I); (2) unseaworthiness (Count II); and (3) maintenance, cure, and found (Count III).  [Complaint at ¶¶ 2-18.]

I.  **Plaintiff's Motion**

Plaintiff seeks partial summary judgment on the grounds that: (1) Grove Farm is liable under the Jones Act based on violations of United States Coast Guard ("Coast Guard") diving regulations; and (2) comparative fault is not an available defense to that liability.

According to Plaintiff, he suffered diving decompression sickness ("DCS" or "the bends") in the course of his employment with Grove Farm.  With respect to his duties, he states that he contributed to the mission of both vessels, helping with mooring lines, piloting, and maintaining engines and equipment during his employment.  He also performed commercial diving tasks staged from Wailoa, which transported divers to Grove Farm's offshore site.  [Pltf.'s Concise Statement of Facts ("CSF"), Declaration of Daniel L. Habel ("Habel Decl."), at ¶¶ 2-10, 14-19.]  Plaintiff spent 95% to 98% of his time on the vessels or diving from them.  [Pltf.'s CSF, Second Declaration of Daniel L. Habel ("Second Habel Decl."), at ¶¶ 3-5.]

Plaintiff states that Grove Farm: permitted scuba diving outside the no-decompression limits on a daily basis and scuba diving below 130 feet at least two or three times per week; did not have a decompression chamber, decompression or treatment tables, or breathing gas for treatment of decompression sickness on site; and did not have work rules ensuring proper detection or reporting of DCS.  [Habel Decl. at ¶¶ 9-13.]  According to Plaintiff's expert, Dr. Robert Sanders, Grove Farm's workplace practices were contributing causes of Plaintiff's DCS.  [Pltf.'s CSF, Declaration of Robert S. Sanders ("Sanders Decl."), at ¶ 5.]

Plaintiff states that he first suffered what he believed to be DCS symptoms in October or November of 2009 after

3

a specific dive deeper than 130 feet at the offshore cages, and felt a sharp and intense pain in his right arm, which he reported to his co-workers and supervisor.  He asserts that he was told that the company was short-staffed, which he understood to mean that he needed to keep working.  He says he was never told that he should seek decompression sickness treatment.  In January 2010, after surfacing from a dive from the Wailoa, he experienced more severe DCS, including numbness and weakness in his right hand and arm, which he reported to his supervisor, Harry Lynch. Mr. Lynch told him that he needed to finish work for the day and could seek recompression treatment the following day; because he wanted to keep his job, Plaintiff complied with his instruction and stayed at work.  The next day, he was treated by Dr. Saunders at the Hyberbaric Treatment Center in Honolulu.  He states that he initially got relief from his symptoms, but they returned within twelve hours after treatment and have not abated since. He was disqualified from diving in January 2010.  [Habel Decl. at ¶¶ 11, 14-20.]

A. __Seaman Status__

Plaintiff first argues that he satisfies the test for Jones Act seaman status as a matter of law because he: (1) contributed to the mission of the two vessels in navigation, Wailoa and Feed Barge; and (2) had a substantial connection to the vessels in navigation, spending nearly all of his work time

in the service of Wailoa and Feed Barge for nine months.  [Mem. in Supp. of Motion at 4-6.]

###    B.    Statutory Violations Constitute Negligence Per Se

Plaintiff next argues that Coast Guard commercial diving operations regulations create mandatory legal duties under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60, which is applicable in Jones Act cases.  [Id. at 2 (citing Kernan v. Am. Dredging Co., 355 U.S. 426, 439 (1958)).]  Plaintiff maintains that FELA § 51 provides the basis for employer liability here, and that liability is established when an employer's violation of a statutory duty is a contributing cause of injury.  [Id. at 7 (citing Kernan, 355 U.S. at 437-39 (1958)); MacDonald v. Kahikolu, 442 F.3d 1199, 1203 (9th Cir. 2006)).]

Plaintiff states that Coast Guard regulations relating to commercial diving operations applied to his diving work staged from Wailoa because Wailoa is required to have a certificate of inspection issued by the Coast Guard as a "towing vessel" subject to inspection.  [Id. at 8 (citing 46 U.S.C. §§  2101(40), 3301(15), and 3311(a); 46 C.F.R. § 197.202).]  He alleges the following regulatory violations:

• 46 C.F.R. § 197.430, which provides in relevant part:

        The diving supervisor shall insure that-
        (a) SCUBA diving is not conducted-
                (1) Outside the no-decompression limits;
                (2) At depths greater than 130 fsw[.]

Working from Wailoa, Plaintiff claims he regularly made scuba dives outside the no-decompression limits and deeper than 130 feet salt water ("fsw"), and that Grove farm's instructing him, or even allowing him to, violated this Coast Guard regulation.  [Id. at 9.]

• 46 C.F.R. § 197.314(c), which provides in relevant part:

> (c) Each dive location supporting mixed-gas dives, dives deeper than 130 fsw, or dives outside the no-decompression limits must . . . have-
> (1) A decompression chamber;
> (2) Decompression and treatment tables;
> (3) A supply of breathing gases sufficient to treat for decompression sickness[.]

During Plaintiff's employment at Grove Farm's offshore site, he asserts that there was no decompression chamber, no decompression or treatment tables, and no supply of breathing gas sufficient to treat decompression sickness.  [Id.]

• 46 CFR § 197.410, which provides in relevant part:

> (a) The diving supervisor shall insure that-
> . . . .
> (7) After the completion of each dive-
> (i) The physical condition of the diver is
> checked by-
> (A) Visual observation; and
> (B) Questioning the diver about his physical well-being;
> (ii) The diver is instructed to report any
> physical problems or adverse physiological
> effects including aches, pains, current illnesses, or symptoms of decompression sickness or gas embolism;
> . . . .

6

(8) For any dive outside the no-decompression
limits, deeper than 130 fsw, or using mixed-
gas
as a breathing mixture-
. . . .
    (iii) A dive team member, other than the
    diver, is trained and available to
    operate the decompression chamber[.]

Plaintiff asserts that Grove Farm did not meet these requirements, and the only remaining issue is whether these violations contributed to his injury. [Id. at 10.] He argues that, under the minimal Jones Act standard for legal causation, he need only show that the employer's negligence was a contributing cause. Based on the opinion of his treating physician, Dr. Sanders, that Grove Farm's alleged statutory violations played a part in causing his injury, Plaintiff argues that he has satisfied this standard. [Id. at 11 (citing Sanders Decl. at ¶ 5).]

## C. **Statutory Violations Bar Comparative Fault Defense**

Next, Plaintiff argues that the defense of comparative fault is barred under FELA § 53, which provides that: "No . . . employee who shall be injured . . . shall be held to have been guilty of contributory negligence in any case where the violation . . . of any statute enacted for the safety of employees contributed to the injury . . . ." [Id. at 12.] He states that he meets the five-element test set forth in Fuszek v. Royal King Fisheries, Inc., 98 F.3d 514, 516 (9th Cir. 1996), for application of this section because: (1) Grove

7

Farm violated Coast Guard regulations; (2) Plaintiff, as a
commercial diver, was an intended beneficiary; (3) the Coast
Guard regulations were designed to prevent the diving injury
Plaintiff suffered; (4) the unexcused nature of the regulatory
violation relating to safety; and (5) Plaintiff established
causation.  [Id. at 12-13.]

## II.   Defendants' Memorandum in Opposition

        Defendants argue in their memorandum in opposition that
Plaintiff is not entitled to summary judgment on his negligence
per se claim because the cited Coast Guard regulations do not
apply, and, at the time of the alleged incidents, the Coast Guard
did not require inspection of Defendants' vessel.  [Mem. in Opp.
at 1.]

        With respect to the factual record, Defendants contend
that Plaintiff did not disclose that he had suffered DCS prior to
his employment and would not have been hired as a diver had he
disclosed this fact because it makes a diver more susceptible to
future problems with DCS.  [Defs.' CSF, Declaration of Harry W.
Lynch ("Lynch Decl."), at ¶ 3.]  As a diver, Plaintiff was
responsible for inspecting, repairing, and cleaning cages;
feeding and monitoring the feeding of the fish; removing dead
fish; and harvesting the fish for market.  While Plaintiff was an
employee, divers provided their own equipment except for dive
computers that were provided by Defendants.  The dive computers

8

told the divers the depth of their dive, time at depth, total length of dive, proper ascent rate, nitrogen absorbed, water temperature, and the available dive time for a no-decompression dive.  The dive computers also calculated rest periods based on dive decompression tables stored in the computers, and provided no-decompression limits for repetitive dives.  Harry Lynch, Defendants' Offshore Manager, was in charge of maintaining dive equipment, and states that he regularly checked the dive computers to make sure they were functioning properly.  [Id. at ¶¶ 5-8.]

According to Mr. Lynch, Defendants' offshore farm site consisted of four cages.  The tops of the cages were 30 feet below the surface, the bottoms of the cages were 85-90 feet below the surface, and the ocean bottom lies 100-140 feet below the surface.  All dives were purportedly monitored by a dive supervisor who was responsible for ensuring everyone was diving safely, and were planned to prevent the divers from exceeding no-decompression limits.  Supervisors observed and questioned divers throughout the day checking for problems, and a diver reporting DCS symptoms would have been sent to the nearest decompression chamber immediately.  Mr. Lynch declares that, contrary to Plaintiff's claims, divers did not dive outside no-decompression limits and did not dive to or below 130 fsw two to three times a week as part of their job.  He states that he never ordered

Plaintiff to dive to 130 fsw or deeper, and if Plaintiff did so, he did so without the knowledge or permission of Defendants. [Id. at ¶¶ 9-17.]

Defendants maintain that they held safety meetings to discuss safety issues, including the need to report any accidents or injuries immediately, and the location and availability of the nearest decompression chamber was discussed.  Mr. Lynch states that dive/decompression tables were kept on Wailoa, and also available on the dive computers.  An oxygen tank/kit was also kept aboard Wailoa in case of emergency.  [Id. at ¶¶ 18-20.]

According to Defendants, Plaintiff did not report the alleged October/November incident to Randy Cates, the Chief Executive Officer, or Mr. Lynch, thus, Defendants were not aware of an October/November DCS incident.  Mr. Lynch states that was he not in Hawaiʻi when the incident occurred, and that he learned of it from other employees after Plaintiff sought treatment, and then he told Mr. Cates.  [Id. at ¶¶ 21-22.]

A.    **Negligence Per Se**

Defendants first argue that the Coast Guard regulations cited by Plaintiff do not apply here because the Coast Guard has never required Wailoa to have a certificate of inspection and it was not an inspected vessel when Plaintiff was an employee.

Defendants note that the Coast Guard and Maritime Act of 2004 amended 46 U.S.C. §§ 3301 et seq. to add towing vessels

to the classes of vessels that require inspection.  Other than

this general rule, however, they argue that the statute was

silent as to what particular cases came within the rule

prescribed by Congress.  Instead, it authorized the Coast Guard

to establish regulations for implementing the new requirement.

They argue that this is an instance in which Congress enacted a

statute that has no force of its own without the administrative

adoption of implementing regulations.  [Id. at 8 (citing

California Bankers Assoc. v. Shultz, 416 U.S. 21, 26 (1974)).]

Defendants note that, in amending 46 U.S.C. § 3301, Congress

stated that:

> Section 3306 of title 46 details the items that
> are to be regulated. . . .  The Coast Guard may
> prescribe different standards for towing vessels
> than for other types of inspected vessels[,] . . .
> [and] different standards for the various types of
> towing vessels. . . .  New section 3306(j) of
> title 46, United States Code, authorizes the
> Secretary of the department in which the Coast
> Guard is operating to establish by regulation a
> safety management system appropriate for the
> characteristics, methods of operations, and nature
> of service of towing vessels.

[Id. at 9 (quoting H.R. Conf. Rep. 108-617, 2004 U.S.C.C.A.N. at

953).]  Defendants argue that the statute itself did not

establish requirements for a certificate of inspection for

Defendants' vessel, Wailoa.  Instead, pursuant to 46 U.S.C. §

3306, it provided the Coast Guard authority to fashion the

necessary regulations.  Defendants point to 46 U.S.C. § 3306(a),

which provides that, "[t]o carry out this part [46 U.S.C § 3301

*et seq.*] and to secure the safety of individuals and property on board vessels subject to inspection, the Secretary shall prescribe necessary regulations to ensure the proper execution of and to carry out this part [46 U.S.C § 3301 *et seq.*] in the most effective manner[.]"  Section 3306(j) grants the Secretary discretion in determining the requirements for inspection stating that the Secretary "may establish by regulation a safety management system appropriate for the characteristics, methods of operation, and nature of service of towing vessels." [<u>Id.</u> at 10.]

Defendants argue that 46 U.S.C. § 3301(15), the section of the statute cited by Plaintiff as requiring inspection of Wailoa, is dependant on the Coast Guard's <u>pending</u> regulations to determine whether vessels like Wailoa are subject to inspection, and if so, the nature and scope of the inspection.  They claim that the Coast Guard regulations governing the inspection of towing vessels have not been established and were not in effect while Plaintiff was employed.  For example, on October 15, 2010, the Coast Guard Authorization Act of 2010 was enacted as Public Law 111-281, Title VII, § 701(c), 124 Stat. 2980, and provides that "[n]o later than 90 days after the date of enactment of this Act, the Secretary shall issue a notice of proposed rulemaking regarding inspection requirements for towing vessels required under Section 3306(j) of Title 46, United States Code.  The

Secretary shall issue a final rule pursuant to that rulemaking no later than 1 year after the date of enactment of this Act."  On August 11, 2011, the Coast Guard promulgated a "Notice of Proposed Rulemaking," seeking "'to establish safety regulations governing the inspection, standards, and safety management systems of towing vessels[,]'" and the Notice states the Coast Guard proposes "'to establish a comprehensive safety system that includes company compliance, vessel compliance, vessel standards, and oversight in a new Code of Federal Regulations subchapter dedicated to towing vessels.'"  [Id. at 11 (quoting Federal Register Doc. 2011-18989 at 49976, 49978, available at http://www.gpo.gov/fdsys/pkg/FR-2011-08-11/pdf/2011-18989.pdf).]

Defendants maintain that the dive operations regulations cited by Plaintiff do not apply because all of Defendants' dive operations took place from an uninspected vessel.  They argue that, 46 C.F.R. § 197.202, the commercial diving operations regulation cited by Plaintiff, applies only to vessels engaged in deepwater port or Outer Continental Shelf operations.  [Id. at 12-13 (citing 46 C.F.R. § 197.202(a)).] Defendants argue that Wailoa was not engaged in deepwater port or Outer Continental Shelf diving operations, and therefore, 46 C.F.R. § 197.202 does not apply to Wailoa.  [Id. at 13 (citing Declaration of Paul J. Larson ("Larson Decl."), at ¶ 16).]

C.   **Questions of Fact**

Finally, Defendants argue that they did not allow Plaintiff to dive outside of no-decompression limits or deeper than 130 fsw.  According to Mr. Lynch, in addition to the dive decompression tables available on the dive computers, decompression tables and an oxygen tank/kit were kept on Wailoa. Defendants maintain that divers did not dive outside no-decompression limits and did not dive to or below 130 fsw two to three times a week as part of their job as Plaintiff claims. Moreover, Defendants argue they never ordered Plaintiff to dive to 130 fsw or deeper, and if Plaintiff did so, he did so without the knowledge or permission of Defendants.  Defendants assert that they required divers to report any accidents or injuries immediately, and made sure the divers were aware of the location and availability of the nearest decompression chamber, and any diver reporting DCS symptoms would have been sent to the nearest decompression chamber immediately.  [Id. at 15 (citing Lynch Decl.).]  Defendants argue that, although the regulations do not apply to their dive operations, even if they did, Defendants did not violate the regulations.

III. **Plaintiff's Reply**

In his reply, Plaintiff argues that the Motion should be granted in part and denied in part.  First, he notes that Defendants do not offer any facts to dispute Plaintiff's Jones

14

Act Seaman status, and therefore, that issue should be resolved in his favor.  Next, he acknowledges that Mr. Lynch's Declaration creates issues of fact regarding whether Defendants violated the Coast Guard regulations, and, by extension, barring the defense of comparative fault.  Plaintiff argues, however, that the remaining issue before the Court is purely legal, and that he is entitled to summary judgment on the issue of the applicability of the Coast Guard diving regulations to Defendants' operations. Plaintiff asks the Court to grant the Motion as to Plaintiff's Jones Act status and application of the diving regulations, and deny the Motion as to violation of the regulations and barring the defense of comparative fault.  [Reply at 1.]

        As to the applicability of the inspection requirements, Plaintiff argues that Defendants are incorrect that they have no force of law until the Coast Guard promulgates regulations to implement 46 U.S.C. § 3301(15).  [Id. at 4.]  He also argues that liability attaches based on violation of diving regulations promulgated in 1978, not upon the as yet un-promulgated towing regulations.  [Id. at 5-6.]  According to Plaintiff, the relevant statute, 46 U.S.C. § 3301(15), is wholly independent of Plaintiff's claims based on the Coast Guard diving regulations. That is, no further promulgation is required by the Coast Guard to perfect Plaintiff's claims; Congress' enactment of 46 U.S.C. § 3301(15) rendered those regulations applicable to Defendants'

vessel, by operation of law.  [<u>Id.</u> at 6-7.]

To the extent Defendants argue that the Coast Guard will not be promulgating towing regulations applicable to Wailoa, Plaintiff states that the record indicates that the vessel will not be exempt, only that the Coast Guard intends to use a staggered implementation plan that will include all towing vessels.  [<u>Id.</u> at 9-11.]

As to Defendants' claim that the regulations apply only to inspected vessels operating in or around a deepwater port or the Outer Continental Shelf, Plaintiff maintains that all vessels required to undergo Coast Guard inspection are covered under the Coast Guard diving regulations, regardless of their geographic location.  [<u>Id.</u> at 12-13.]

With respect to Defendants' reliance on Mr. Larson's Declaration, Plaintiff argues that his legal opinions should be stricken.  [<u>Id.</u> at 5.]

In summary, Plaintiff argues he is entitled to summary judgment on the applicability of the Coast Guard diving regulations because: (1) 46 U.S.C. § 3301(15) was effective upon enactment in 2004; (2) Mr. Larson's expert Declaration should not be considered; (3) the cases cited by Defendants are distinguishable or irrelevant; (4) the Coast Guard does not intend to exempt any towing vessel, and has not power to legally do so; (5) Wailoa does not fit any purported exemption; and (6)

all inspected vessels are covered, regardless of location.  [Id. at 15.]

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex [Corp. v. Catrett], 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller [v. Glenn Miller Prods., Inc.], 454 F.3d [975,] 987 [(9th Cir. 2006)].

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec.

> Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").
>
> On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations omitted).

## **DISCUSSION**

### I.   **Jones Act Negligence**

#### A. **Seaman Status**

Plaintiff asserts that he is a Jones Act seaman as a matter of law. The Court agrees.

> The Jones Act provides a cause of action for any seaman "injured in the course of employment". 46 U.S.C. § 30104. Section 30104 provides, in pertinent part, that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer."

"The determination of who is a seaman is a mixed question of fact and law." Scheuring v. Traylor Bros., Inc., 476 F.3d 781, 785 (9th Cir. 2007) (citing Chandris, Inc. v. Latsis, 515 U.S. 347, 369, 115 S. Ct. 2172, 132 L. Ed. 2d 314 (1995)). As the Ninth Circuit explained in Scheuring:

> In Chandris, the Court articulated a two-part test which drew on its holdings in earlier cases:
>
>> [T]he essential requirements for seaman status are twofold. First, as we emphasized in [McDermott Int'l, Inc. v.] Wilander, [498 U.S. 337 (1991),] "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" . . . Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and its nature.
>
> Chandris, 515 U.S. at 368, 115 S. Ct. 2172 (citations omitted). . . .
>
> As the Supreme Court explained in Chandris, the first part of the requirement is very broad, covering "'[a]ll who work at sea in the service of a ship.'" Id. (quoting Wilander, 498 U.S. at 354, 111 S. Ct. 807). The second requirement, on the other hand, narrows the pool of potential seaman
>
>> in order to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

Id.  The Court explained that this test is "fundamentally status based." Id. at 361, 115 S. Ct. 2172.  "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." Id. The Court also equated the question of who is a "seaman" to the determination of who is a "member of a crew." Id. at 356, 115 S. Ct. 2172.  Decided two years later, Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 117 S. Ct. 1535, 137 L. Ed. 2d 800 (1997), provides additional guidance on the substantial connection prong of the test articulated in Chandris.

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea.  This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

Papai, 520 U.S. at 555, 117 S. Ct. 1535.  The crux of the second prong of the "seaman" test involves distinguishing land-based from sea-based employees by examining the employee's activities and duties.

Id. at 785-86 (some alterations in original).

A "rule of thumb" for determining seaman status is that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Chandris, 515 U.S. at 371.  The Supreme Court cautioned, however, that the thirty-percent rule of thumb "serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases." Id.

Nguyen v. Nguyen, Civil No. 10-00320 LEK-RLP, 2011 WL 3793344, at *5-6 (D. Hawai'i Aug. 24, 2011).

The record shows that Plaintiff contributed to the mission of the two vessels in navigation, Wailoa and Feed Barge and (2) had a substantial connection to the vessels in navigation, spending at least 95% of his time in the service of Wailoa and Feed Barge.  Defendants did not offer any argument or evidence to the contrary.  Based on Plaintiff's uncontroverted showing on summary judgment, the Court finds that Plaintiff is a seaman under the Jones Act.  The Motion is GRANTED as to Plaintiff's seaman status.

B.  **Liability Based on Regulatory Violations**

The parties agree that an issue of fact exists as to whether Defendants are liable for negligence per se because there is conflicting evidence regarding causation and whether Defendants violated the Coast Guard regulations at issue. Plaintiff maintains that he is entitled to summary judgment on the legal issue of whether those regulations apply in this matter.  Regulatory violations may establish negligence per se as follows:

> [T]he Jones Act expressly grants to seamen the rights and remedies available to railroad workers under FELA.  See 46 U.S.C. App. § 688(a) ("Any seaman who shall suffer personal injury in the course of his employment may . . . maintain an action for damages at law . . . and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases

21

of personal injury to railway employees shall
apply."). <u>Accord</u> <u>Kernan v. American Dredging Co.</u>,
355 U.S. 426, 439, 78 S. Ct. 394, 401-07, 2 L. Ed.
2d 382 (1958).

Section 3 of FELA provides:

In all actions . . . brought against any
. . . common carrier . . . to recover damages
for personal injuries to an employee, . . .
the fact that the employee may have been
guilty of contributory negligence shall not
bar a recovery, but the damages shall be
diminished by the jury in proportion to the
amount of negligence attributable to such
employee: Provided, That no such employee who
may be injured . . . shall be held to have
been guilty of contributory negligence in any
case where the violation by such common
carrier of any statute enacted for the safety
of employees contributed to the injury . . .
of such employee.

45 U.S.C. § 53 (in relevant part; emphasis in
original).

<u>Fuszek v. Royal King Fisheries, Inc.</u>, 98 F.3d 514, 516 (9th Cir.

1996).

In <u>Kernan</u>, the Supreme Court held that under
the Jones Act, a violation of a statute or a Coast
Guard regulation that causes the injury or death
of an employee creates liability "in the absence
of any showing of negligence. . . ."  355 U.S. at
431, 78 S. Ct. 394.  The Court instructed that the
general tort doctrine that an employer is liable
for violation of "a statutory duty only where the
injury is one which the statute was designed to
prevent" is inapplicable under the Jones Act.  <u>Id.</u>
at 432, 78 S. Ct. 394.

The Court summarized its holding as follows:

The FELA and the Jones Act impose upon the
employer the duty of paying damages when
injury to the worker is caused, in whole or
in part, by the employer's fault.  This fault

22

> may consist of a breach of the duty of care,
> analogous but by no means identical to the
> general common-law duty, or of a breach of
> some statutory duty.

Id. (emphasis added).

> Thus, under the Jones Act, the common-law
> concepts of foreseeability and risk of harm are
> not applicable where the employer violates a
> federal statute or a Coast Guard regulation, if
> such conduct in whole or in part caused injury.
> We held in Oglesby v. Southern Pacific Trans. Co.,
> 6 F.3d 603 (1993) that "'an employee is entitled
> to recover damages if the employer's negligence
> played *any* part in producing the injury, no matter
> how slight.'" Id. at 609 (quoting Taylor v.
> Burlington N. R.R., 787 F.2d 1309, 1313 (9th Cir.
> 1986) (emphasis in original)).

MacDonald v. Kahikolu Ltd., 442 F.3d 1199, 1203 (9th Cir. 2006).

The parties dispute whether the Coast Guard regulations cited by Plaintiff in his Motion apply to the Defendants, and whether Wailoa was an "inspected vessel." The Coast Guard and Maritime Transportation Act of 2004, § 415, added "towing vessels" to 46 U.S.C. § 3301. Pub. L. No. 108-293, § 415, 118 Stat. 1028 (Aug. 9, 2004). The Court agrees with Plaintiff that § 3301(15) classifies all "towing vessels" as vessels subject to Coast Guard inspection, and that the action of classification was complete and effective upon enactment in 2004. Although Wailoa is not required to be inspected by current Coast Guard regulations, it does not follow that Wailoa is not a "towing

vessel" subject to § 3301(15).[1]  That is, § 3301(15) brings Defendants' vessel Wailoa within the reach of the inspection statute, regardless of the ultimate inspection regime to be established by as-yet unpromulgated regulations.  See United States v. Massachusetts, 440 F. Supp. 2d 24, 35 (D. Mass. 2006), reversed on other grounds, 493 F.3d 1 (1st Cir. 2007) (rejecting Defendants argument that towing vessels do not fall within the scope of a different statute because towing vessels are not actually inspected, and stating: "[w]hether towing vessels are actually inspected by the Coast Guard or whether the Coast Guard has promulgated regulations on the inspection of towing vessels is irrelevant").

On the current record, the Court finds that Wailoa is a "towing vessel" for purposes of 46 U.S.C. § 3301(15).  The parties do not dispute that Wailoa actually towed the Feed Barge up to twice a week, round-trip, from Honolulu Harbor to the off-shore cages.  [Habel Decl. ¶¶ 5-6; Mem. in Opp. at 11-12

---

[1] To the extent Defendants rely on the Declaration of Paul Larson, their Coast Guard expert, the Court will not consider his expert testimony to the extent it constitutes legal opinion.  See Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) ("However, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."); United States v. Scholl, 166 F.3d 964, 973 (9th Cir. 1999) ("Experts interpret and analyze factual evidence.  They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations." (citation and quotation marks omitted)).

(addressing Wailoa's "occasional tow of the feed barge" and "intermittent towing of the feed barge").]  Further, 46 U.S.C. § 2101(40) – which is part of the same Subtitle II ("Vessels and Seaman") as § 3301, and defines terms used within the subtitle – states that "'towing vessel' means a commercial vessel engaged in or intending to engage in the service of pulling, pushing, or hauling alongside, or any combination of pulling, pushing, or hauling alongside."  Wailoa clearly falls within the plain meaning of this applicable statutory definition.

Moreover, 46 U.S.C. § 3302 lists vessels that are exempt from inspection under § 3301; the parties do not dispute that none of the exemptions applies to Wailoa.  The vessel Wailoa therefore falls within the purview of § 3301(15) as a towing vessel, and is not otherwise exempt under § 3302.  Because the Court finds that Wailoa is a towing vessel and is not exempt from inspection, Wailoa is a "a vessel subject to inspection under this part. . . ."  46 U.S.C. § 3311(a).

To the extent Defendants argue that the commercial diving operations regulations set forth in 46 C.F.R., Part 197, Subpart B do not apply pursuant 46 C.F.R. § 197.202, the Court disagrees.  The regulation regarding applicability states in pertinent part, that:

> This subpart applies to commercial diving
> operations taking place at any deepwater port or
> the safety zone thereof as defined in 33 C.F.R.
> part 150; from any artificial island,

25

installation, or other device on the Outer
Continental Shelf and the waters adjacent thereto
as defined in 33 C.F.R. part 147 or otherwise
related to activities of the Outer Continental
Shelf; <u>and from all vessels required to have a
certificate of inspection issued by the Coast
Guard including mobile offshore drilling units
regardless of their geographic location</u>, or from
any vessel connected with a deepwater port or
within the deepwater port safety zone, or from any
vessel engaged in activities related to the Outer
Continental Shelf . . . .

46 C.F.R. § 197.202(a) (emphasis added).  Defendants argue that

Wailoa was not engaged in deepwater port or Outer Continental

Shelf diving operations, and therefore, 46 C.F.R. § 197.202 does

not apply to Wailoa.  The Court agrees with Plaintiff that, under

its plain meaning, the regulation instead applies to (1) all

vessels required to have a certificate of inspection, regardless

of location, or (2) all vessels, inspected or uninspected,

connected with a deepwater port or engaged in activities on the

Outer Continental Shelf.[2]  As discussed above, Wailoa falls under

_____

[2] The Court notes that:
       "In interpreting the statute we look to
general principles of statutory construction and
begin with the language of the statute itself."
<u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S.
235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290
(1989).  One such principle is the "grammatical
'rule of the last antecedent,' according to which
a limiting clause or phrase . . . should
ordinarily be read as modifying only the noun or
phrase that it immediately follows."  <u>Barnhart v.
Thomas</u>, 540 U.S. 20, 26, 124 S. Ct. 376, 157 L.
Ed. 2d 333 (2003); <u>see also</u> 2A N. Singer,
<u>Sutherland on Statutory Construction</u> § 47.33, p.
369 (6th rev. ed. 2000) ("Referential and
                                    (continued...)

26

the category of "all vessels required to have a certificate of inspection," pursuant to § 3301(15).  It is therefore irrelevant whether Wailoa engaged in deepwater port or Outer Continental Shelf diving operations.

The Court therefore CONCLUDES that the Coast Guard commercial diving operations regulations set forth in Subpart B of 46 C.F.R. §§ 197.200 through 197.488 apply to Defendants' diving operations from the vessel Wailoa.  Plaintiff's Motion is

---

[2](...continued)
> qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.")).  The rule's corollary provides that "where there is a comma before a modifying phrase, that phrase modifies all of the items in a series and not just the immediately preceding item." <u>Stepnowski v. C.I.R</u>, 456 F.3d 320, 324 (6th Cir. 2006) (citation omitted).

<u>United States v. Jackson</u>, No. CR-09-1115 JF, 2010 WL 3325611, at *8 (N.D. Cal. Aug. 23, 2010).

The general rule is that when a conjunction connects two coordinate clauses or phrases, a comma or other punctuation should precede the conjunction if it is intended to prevent following qualifying phrases from modifying the clause which precedes the conjunction.  <u>Id.</u> at *5.  Here, the various clauses separated by semi-colons do not appear to be subordinate to one another.  That is, the conjunctive "and from all vessels required to have a certificate of inspection" following a semi-colon does not modify the entirety of the first clause "[t]his subpart applies to commercial diving operations taking place at any deepwater port or the safety zone thereof as defined in 33 C.F.R. part 150" or the second clause; rather it modifies only the first phrase "[t]his subpart applies to commercial diving operations taking place".  Further, the phrase following the comma, "or from any vessel connected with a deepwater port or within the deepwater port safety zone, of from any vessel engaged inactivities related to the Outer Continental Shelf . . . ." is disjunctive and does not modify the preceding clause "and from all vessels . . . ."

GRANTED with respect to this issue.

## III. **Negligence and the Comparative Fault Defense**

Plaintiff acknowledges that Mr. Lynch's Declaration creates issues of fact regarding whether Defendants violated the Coast Guard regulations, and, by extension, barring the defense of comparative fault.  With respect to Jones Act liability and the defense of comparative fault, the Court finds that there are disputed issues of fact regarding the depth of Plaintiff's dives while working for Defendants, whether Plaintiff performed any dives outside of no-decompression limits, and whether he was injured while at work for Defendants or on his own time.  The Motion is DENIED with respect to these issues, and all other issues raised in the Motion, but not specifically addressed above.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Partial Summary Judgment, filed November 1, 2011, is HEREBY GRANTED IN PART as to Plaintiff's status as a seaman under the Jones Act, and as to the applicability of United States Coast Guard commercial diving operations regulations.  The Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 27, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DANIEL L. HABEL V. GROVE FARM FISH & POI, LLC, ET AL; CIVIL NO. 10-00576 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT