IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DANIEL L. HABEL,                )    CIVIL NO. 10-00576 LEK-BMK
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
GROVE FARM FISH & POI, LLC,     )
dba Hukilau Foods, <u>in</u>    )
<u>personam</u>; M/V WAILOA HA533CC, )
and the FEED BARGE HA737CC,     )
their Engines, Tackle,          )
Apparel, Furniture and          )
Appurtenances, etc., <u>in</u> <u>rem</u>, )
                                )
          Defendants.           )
_____ )


**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

          Before the Court is Defendants Grove Farm Fish & Poi,

LLC, doing business as Hukilau Foods ("Grove Farm"), M/V Wailoa

HA 533CC, and Same Smell HA 0737CC's (collectively "Defendants")

Motion for Reconsideration of the Order Granting in Part and

Denying in Part Plaintiff's Motion for Partial Summary Judgment

Filed February 27, 2012 ("Motion"), filed March 12, 2011.

Plaintiff Daniel Habel ("Plaintiff") filed his memorandum in

opposition on March 23, 2012, and Defendants filed their reply on

April 2, 2012.  The Court finds this matter suitable for

disposition without a hearing pursuant to Rule LR7.2(d) of the

Local Rules of Practice of the United States District Court for

the District of Hawai`i ("Local Rules").  After careful

consideration of the Motion, the supporting and opposing

memoranda, and the relevant legal authority, this Court HEREBY
DENIES Defendants' Motion.

**BACKGROUND**

The parties and the Court are familiar with the factual
and procedural background of this case.  The Court therefore will
only discuss the background that is relevant to the instant
Motion.

Plaintiff was employed as a diver and offshore crewman
by Grove Farm from April 2009 to February 2010.  Grove Farm
raises moi fish in open-ocean cages off of Ewa Beach, Oahu, and
owns and operates *in rem* defendants M/V Wailoa HA 533CC
("Wailoa"), and the Feed Barge Same Smell HA 0737CC ("Feed
Barge").  Plaintiff alleges that he was injured during the course
of his employment, and that Grove Farm failed to provide a safe
place in which to work, including a lack of commercial diving
safeguards and procedures required by law.  Plaintiff's Complaint
alleges: (1) Jones Act negligence pursuant to 46 U.S.C. § 30104
(Count I); (2) unseaworthiness (Count II); and (3) maintenance,
cure, and found (Count III).  [Complaint at ¶¶ 2-18.]

Plaintiff sought partial summary judgment, *inter alia*,
on the ground that Grove Farm is liable under the Jones Act based
on violations of United States Coast Guard ("Coast Guard")
commercial diving operations regulations.  He argued that the
regulations create mandatory legal duties under the Federal

Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60, which is applicable in Jones Act cases.  He asserted that the regulations applied to his diving work staged from Wailoa because Wailoa is required to have a certificate of inspection issued by the Coast Guard as a "towing vessel" subject to inspection, under 46 U.S.C. §§ 2101(40), 3301(15), 3311(a), and 46 C.F.R. § 197.202.

Defendants argued in opposition that the regulations do not apply here because the Coast Guard has never required Wailoa to have a certificate of inspection and it was not an inspected vessel when Plaintiff was an employee.  Defendants argued that 46 U.S.C. § 3301(15), the section of the statute cited by Plaintiff as requiring inspection of Wailoa, is dependant upon the Coast Guard's pending rulemaking to determine whether vessels like Wailoa are subject to inspection, and if so, the nature and scope of the inspection.

In its February 27, 2012 Order ("Order"), the Court granted Plaintiff partial summary judgment as to the applicability of the Coast Guard commercial diving operations regulations as follows:

> The parties dispute whether the Coast Guard
> regulations cited by Plaintiff in his Motion apply
> to the Defendants, and whether Wailoa was an
> "inspected vessel."  The Coast Guard and Maritime
> Transportation Act of 2004, § 415, added "towing
> vessels" to 46 U.S.C. § 3301. Pub. L. No. 108-293,
> § 415, 118 Stat. 1028 (Aug. 9, 2004).  The Court
> agrees with Plaintiff that § 3301(15) classifies
> all "towing vessels" as vessels subject to Coast
> Guard inspection, and that the action of

3

classification was complete and effective upon enactment in 2004.  Although Wailoa is not required to be inspected by current Coast Guard regulations, it does not follow that Wailoa is not a "towing vessel" subject to § 3301(15).  That is, § 3301(15) brings Defendants' vessel Wailoa within the reach of the inspection statute, regardless of the ultimate inspection regime to be established by as-yet unpromulgated regulations.  See United States v. Massachusetts, 440 F. Supp. 2d 24, 35 (D. Mass. 2006), reversed on other grounds, 493 F.3d 1 (1st Cir. 2007) (rejecting Defendants argument that towing vessels do not fall within the scope of a different statute because towing vessels are not actually inspected, and stating: "[w]hether towing vessels are actually inspected by the Coast Guard or whether the Coast Guard has promulgated regulations on the inspection of towing vessels is irrelevant").

On the current record, the Court finds that Wailoa is a "towing vessel" for purposes of 46 U.S.C. § 3301(15).  The parties do not dispute that Wailoa actually towed the Feed Barge up to twice a week, round-trip, from Honolulu Harbor to the offshore cages.  [Habel Decl. ¶¶ 5-6; Mem. in Opp. at 11-12 (addressing Wailoa's "occasional tow of the feed barge" and "intermittent towing of the feed barge").]  Further, 46 U.S.C. § 2101(40) — which is part of the same Subtitle II ("Vessels and Seaman") as § 3301, and defines terms used within the subtitle — states that "'towing vessel' means a commercial vessel engaged in or intending to engage in the service of pulling, pushing, or hauling alongside, or any combination of pulling, pushing, or hauling alongside."  Wailoa clearly falls within the plain meaning of this applicable statutory definition.

Moreover, 46 U.S.C. § 3302 lists vessels that are exempt from inspection under § 3301; the parties do not dispute that none of the exemptions applies to Wailoa.  The vessel Wailoa therefore falls within the purview of § 3301(15) as a towing vessel, and is not otherwise exempt under § 3302. Because the Court finds that Wailoa is a towing vessel and is not exempt from inspection, Wailoa is a "a vessel subject to inspection under this

4

part. . . ."  46 U.S.C. § 3311(a).

. . . .

The Court therefore CONCLUDES that the Coast
Guard commercial diving operations regulations set
forth in Subpart B of 46 C.F.R. §§ 197.200 through
197.488 apply to Defendants' diving operations
from the vessel Wailoa.  Plaintiff's Motion is
GRANTED with respect to this issue.

Habel v. Grove Farm Fish & Poi, LLC, Civil No. 10-00576 LEK-BMK,

2012 WL 668810, at *11-13 (D. Hawai'i Feb. 27, 2012).

I.   **Defendants' Motion**

Defendants ask the Court to reconsider its Order and

deny Plaintiff's motion for summary judgment based on manifest

errors of fact and law.  First, they argue that Wailoa is not an

inspected vessel under 46 U.S.C. § 3301(15) because this section

lists "towing vessels" as subject to inspection, but does not

classify any vessels as "towing vessels."  Rather, they argue

that, under the present regulations, 46 C.F.R. § 2.01-7(a),

towing vessels are exempt from inspection.  Next, they argue that

the Court mistakenly read § 3301(15) as immediately requiring

towing vessels to have a certificate of inspection, when they are

only "subject to inspection" under the statute.  [Mem. in Supp.

of Motion at 3-5.]

Further, Defendants argue that the Coast Guard has

interpreted the statutes and regulations at issue, and does not

currently require Wailoa to be inspected or have a certificate of

inspection.  According to Defendants, the Coast Guard's current

5

rulemaking project is not complete and future regulations may or may not require Wailoa to be inspected.  [Id. at 6-7.] Defendants argue that, even assuming that Wailoa may eventually be subject to inspection, at the time Plaintiff was employed, she was not actually inspected, inspection was not required, and she was not required to have a certificate of inspection.  [Id. at 7-8.]

Defendants submit for the first time the opinion of MST1 Russell M. Strathern, Sector Honolulu, Prevention Department, United States Coast Guard, who states in an email to Defendants' counsel that "Federal Commercial Diving regulations contained in 46CFR197 are not applicable to your Uninspected Towing Vessel [WAILOA] as per 46CFR197.202." [Motion, Declaration of Counsel, Exh. B (3/9/12 Email from Mr. Strathern).]  According to Defendants, Mr. Strathern is "the local Coast Guard authority on matters concerning towing vessels." [Declaration of Counsel at ¶ 3.]  Defendants also submit the declarations of three individuals who own or operate tugboats or towing vessels in the state, indicating that the Coast Guard does not currently require their vessels to be inspected or have certificates of inspection.  [Motion, Declaration of Ed Morris at ¶ 4; Declaration of Brad Rimell at ¶ 4; Declaration of Michael MacDonald ¶ 4.]

Next, Defendants explain the effect of the Court's Order on the towing industry.  They assert that the Order is manifestly unjust because it forces owners of thousands of "towing vessels" that are currently not required to have a certificate of inspection to immediately comply with regulations that are effective for vessels required to have a certificate. They explain that, because the Coast Guard has not finalized and promulgated regulations requiring towing vessel to have inspections and certifications, these owners have had no notice of the change in the status of their vessels and have had no opportunity to comply with the regulations applicable to inspected vessels.  [Id. at 8-9.]  As a result, they argue that the effect of the Order could be far reaching because it establishes strict liability for every violation of regulations that apply to inspected vessels, which could lead to widespread violations throughout the towing industry and effectively paralyze the industry and the courts while the owners are defending against large numbers of lawsuits for violations of regulations that do not apply to their uninspected towing vessels.  According to Defendants, the effects of the lack of notice have been compounded by the Coast Guard telling the towing industry they do not need to be inspected and the regulations applicable to inspected vessels do not apply to them at this time.  [Id. at 9-10.]

7

Defendants assert that,

> [b]y ruling that the inspected vessel regulations
> apply to towing vessels, even though they are not
> required to be inspected by the Coast Guard, the
> Court has completely rewritten the standards
> pertaining to tort law for towing vessels.  Under
> the Court's interpretation, vessel owners are
> subject to strict liability and are not entitled
> to the defense of comparative fault if the owners
> have not complied with all inspected vessel
> regulations.
>
>      Representatives of Hawaii's towing industry
> believe their vessels are not required to have an
> inspection and/or a certificate of
> inspection. . . .  Consequently, the owners of
> Hawaii's towing vessels could suffer the problems
> outlined above and Hawaii's towing industry could
> be forced to curtail or stop certain services
> entirely until the owners can examine the numerous
> regulations that apply to inspected vessels and
> ensure their vessels comply with those
> regulations.

[Id. at 10-11.]

Finally, Defendants urge the Court to defer to the

Coast Guard's reasonable interpretation of the statutes and

regulations at issue here.  [Id. at 11-14.]

**II.   Plaintiff's Opposition**

In his opposition, Plaintiff states that the Motion

improperly submits additional evidence that was previously

available and raises new arguments, which are not permitted in a

motion for reconsideration.  [Mem. in Opp. at 3.]

With respect to the new arguments, Plaintiff argues

that Defendants' reliance on the opinions of Coast Guard

personnel regarding the applicability of the regulations is

without merit.  He asserts that Defendants' arguments urging the
Court to defer to the Coast Guard's interpretation is a new
argument that they should have made in the original briefing.
Plaintiff also maintains that Defendants' argument regarding the
"disastrous effects" of the diving regulations applying to Wailoa
is a new argument that Defendants had an obligation to bring in
the original briefing, and is an insufficient ground for
reconsideration.  [Id. at 5.]  He argues that Defendants
erroneously assume that all inspected vessel regulations apply to
all inspected vessels.  Rather, argues Plaintiff, the Coast Guard
distinguishes between various types of inspected vessels and
promulgated separate sets of regulations.  Here, he maintains
that the Wailoa is both a towing vessel and a commercial diving
vessel, and therefore, "unless and until the rest of the Hawaii
towing industry . . . *also* start staging commercial diving
operations from their Vessels, the Order does not encompass
them."  [Id. at 11.]

        With respect to the Coast Guard emails submitted by
Defendants, Plaintiff argues that they were not promulgated in
the exercise of any agency authority, are not adjudication or
notice-and-comment rulemaking, and are not to be afforded the
level of deference urged by Defendants under Chevron U.S.A., Inc.
v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).
He argues that, here, the informal emails solicited by telephone

calls from defense counsel are not entitled to great weight

because they lack thoroughness and are conclusory.  [Id. at 6-9.]

III. **Defendants' Reply**

In their reply, Defendants assert that no new facts or

arguments are raised in their Motion.  Rather, they maintain that

the exhibits and declarations from Coast Guard officials and

representatives of the local towing industry do not offer new

facts, they "merely affirm and emphasize the Coast Guard's and

industry's interpretation that regulations applicable to

inspected vessels do not currently apply to towing vessels."

[Reply at 4.]  They state that their arguments urging deference

to the Coast Guard's purported interpretation of the statutes and

regulations at issue, and the effect of the Court's application

of the regulation, are not new arguments.  [Id. at 5-6.]

Next, Defendants argue again that the Coast Guard's

interpretation is entitled to full Chevron deference based on an

express congressional declaration of authority to the Coast

Guard, and because the agency's construction is sufficiently

reasonable.  [Id. at 8-11.]

Last, Defendants emphasize that the effects of the

Court's Order are widespread and create problems for the towing

industry throughout the nation.  They argue that the Order makes

inspected vessel regulations other than the commercial diving

regulations – such as hazardous materials regulations –

applicable to uninspected vessels.  They also argue that the
Order eliminates the need for a plaintiff to prove negligence,
and unfairly shifts the legal framework for a finding of fault,
by applying standards to uninspected vessels that only apply to
inspected vessels.  Defendants assert that the Order makes owners
of towing vessels who have unknowingly failed to comply with
regulations applicable to inspected vessels subject to lawsuits
for violations of those regulations, despite "Coast Guard
assurances that the regulations applicable to inspected vessels
do not apply to their uninspected towing vessels." [Id. at 15.]
They warn that, the Order, "if not reversed, could precipitate a
maelstrom of litigation that involves towing vessel owners and
courts nationwide." [Id. at 16.]

## DISCUSSION

     "[A] successful motion for reconsideration must
accomplish two goals.  First, a motion for reconsideration must
demonstrate reasons why the court should reconsider its prior
decision.  Second, a motion for reconsideration must set forth
facts or law of a strongly convincing nature to induce the court
to reverse its prior decision." Donaldson v. Liberty Mut. Ins.
Co., 947 F. Supp. 429, 430 (D. Hawai`i 1996); accord Tom v. GMAC
Mortg., LLC, CIV. NO. 10-00653 SOM/BMK, 2011 WL 2712958, at *1
(D. Hawai`i July 12, 2011) (citations omitted).

This district court recognizes three grounds for granting reconsideration of an order: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Hawai`i 2006) (citing Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178-79 (9th Cir. 1998)).  "Mere disagreement with a previous order is an insufficient basis for reconsideration." Id. "Whether or not to grant reconsideration[,]" however, "is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir. 2000)).

First, the declarations and exhibits provided for the first time in Defendants' Motion do not constitute newly available evidence.  To base a motion for reconsideration on the discovery of new evidence, Defendants are "obliged to show not only that this evidence was newly discovered or unknown to [them] . . . but also that [they] could not with reasonable diligence have discovered and produced such evidence." Frederick S. Wyle Prof'l Corp. v. Texaco, Inc., 764 F.2d 604, 609 (9th Cir. 1985) (citation and quotation marks omitted); see also Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 n.6 (9th Cir. 1994) ("Evidence is not newly discovered if it was in the party's possession at the

12

time of [the decision] or could have been discovered with
reasonable diligence." (citation omitted)); <u>Sch. Dist. No. 1J v.
ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The
overwhelming weight of authority is that the failure to file
documents in an original motion or opposition does not turn the
late filed documents into 'newly discovered evidence.'").  The
new evidence here does not constitute grounds for reconsideration
and the Court will not grant reconsideration based on testimonial
evidence that easily could have been raised in connection with
the original motion.

Second, to the extent Defendants' exposition of the
ill-effects of the Order on the local and national towing
industries constitutes new argument, it is not proper grounds for
reconsideration.  The Court need not consider evidence of this
specific alleged harm that could have been presented in
opposition to Plaintiff's original motion for summary judgment.
<u>See</u> <u>Hawaii Stevedores, Inc. v. HT & T Co.</u>, 363 F. Supp. 2d 1253,
1269 (D. Hawai'i 2005) ("reconsideration may not be based on
evidence and legal arguments that could have been presented at
the time of the challenged decision").  In any event, the Court
is not convinced of the far-reaching effects claimed by
Defendants, because the Court's ruling is specific to the Wailoa,
which appears to be engaged in towing, commercial diving, and
feeding operations.  There is no indication that any other

13

aquiculture company operates towing vessels from which commercial diving operations are staged.  The current record before the Court suggests that Wailoa is not purely a towing vessel, tugboat, or water taxi; therefore, it is not representative of all towing vessels in the state.  Moreover, the Court's ruling is limited as follows: "The Court therefore CONCLUDES that the Coast Guard commercial diving operations regulations set forth in Subpart B of 46 C.F.R. §§ 197.200 through 197.488 apply to Defendants' diving operations from the vessel Wailoa."  Order, 2012 WL 668810, at *11-13.  In sum, it appears that the Order affects only the operations of Defendants, as alleged here, and could not be applied to Hawaii's towing industry in the expansive manner broadly painted by Defendants in their Motion.

        Finally, to the extent Defendants repeat arguments made in opposition to the original motion for summary judgment, and again argue that § 3301(15) is dependant on the Coast Guard's pending regulations to determine whether vessels like Wailoa are subject to inspection, and which were not in effect while Plaintiff was employed, this Court addressed these arguments in connection with the motion for summary judgment and will not re-examine them here.  Whether or not towing vessels are currently inspected by the Coast Guard, § 3301(15) is clear that "towing vessels" are "subject to inspection."  Defendants fail to show manifest error of law in the Court's Order.  "Mere disagreement

14

with a previous order is an insufficient basis for
reconsideration." <u>White</u>, 424 F. Supp. 2d at 1274 (citing <u>Leong</u>
<u>v. Hilton Hotels Corp.</u>, 689 F. Supp. 1572 (D. Hawai'i 1988)).

<b><u>CONCLUSION</u></b>

On the basis of the foregoing, Defendants' Motion for
Reconsideration of the Order Granting in Part and Denying in Part
Plaintiff's Motion for Partial Summary Judgment Filed
February 27, 2012, filed March 12, 2011, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 4, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<b><u>DANIEL L. HABEL V. GROVE FARM FISH & POI, LLC, ET AL</u></b>; CIVIL NO.
<b>10-00576 LEK-BMK; ORDER</b>